J-S13015-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CORINNE A. JENKINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEWART J. JENKINS | : | No. 3182 EDA 2025 |
| | : | |

Appeal from the Order Entered November 12, 2025
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 0C2500077

BEFORE: PANELLA, P.J.E., NICHOLS, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JULY 8, 2026**

Corinne A. Jenkins ("Mother") appeals from the November 12, 2025 final custody order with respect to her daughter, C.J., born in November of 2021, whom she shares with Stewart J. Jenkins ("Father"). After careful review, we affirm in part, vacate in part, and remand in accordance with this memorandum.

We gather the relevant facts and procedural history from the trial court's Rule 1925(a) opinion and the documentary evidence, as follows.

> [T]he parties met while Father was stationed in Warner Robbins, Georgia, serving in the United States Air Force ("USAF"). N.T., 11/12/25, at 209. Prior to joining the USAF, Father resided in San Antonio, Texas. *Id.* . . . Prior to living in Georgia . . ., Mother was a lifelong resident of Philadelphia, Pennsylvania. *Id.* at 73.
>
> The parties married in October of 2017. *See* Father's Exhibit 1, p.9. In May of 2020, the parties moved to Japan pursuant to

> Father's deployment through the USAF. *See* N.T., 11/12/25, at 209. C.J. was born in Japan in November of 2021. *Id.* While still living in Japan [with Mother and C.J.], Father filed for divorce from Mother in Texas in March of 2023. *See* N.T., 11/12/25, at 210.

Trial Court Opinion, 1/16/26, at 1-3 (cleaned up).

In May of 2023, Mother filed a counterclaim for divorce and custody of C.J. in Texas. *See* Mother's Exhibit 5 at 2 (Texas memorandum opinion). The Texas trial court issued an order dated June 9, 2023, providing, *inter alia*: (1) Mother permission to relocate from Japan to Philadelphia with C.J.; (2) Father partial physical custody of C.J. as the parties agreed; and (3) the parties would split C.J.'s unreimbursed medical expenses on a 50/50 basis. *See* Mother's Exhibit 3 at 6, 8, 13. Thereafter, Mother and C.J. relocated from Japan to Philadelphia, Pennsylvania, where they continued to live at the time of these proceedings. *See id.*

The Texas custody litigation resulted in a partially agreed-upon order in September of 2024, awarding the parties shared legal and physical custody of C.J. *See* Mother's Exhibit 5 at 2. In November of 2024, however, Mother filed a motion to sever and for a writ of mandamus in the Fourth Court of Appeals in Texas, seeking to dismiss the custody petition for lack of subject matter jurisdiction since C.J. had never resided in Texas. *See id.* at 2-3.

On January 15, 2025, Mother filed a complaint in the Court of Common Pleas of Philadelphia County for primary physical and sole legal custody of C.J., while her petition to sever was pending. On March 5, 2025, the Texas appellate court filed a memorandum opinion concluding that (1) Texas lacked

subject matter jurisdiction regarding custody of C.J. since it was not her "home state" within the meaning of Tex. Fam. Code § 152.201(a)(1)-(4); (2) the record did not support a finding that Father was permitted to seek custody in Japan; and (3) Mother's residency with C.J. in Philadelphia, coupled with her filing of a custody petition, meant that Pennsylvania had acquired home state jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Mother's Exhibit 5 at 4-7. Thus, pursuant to the instructions of the Texas appellate court, the Texas trial court dismissed the portion of its orders related to custody of C.J., but retained jurisdiction over the divorce and child support proceedings. *See id.*; *see also* Trial Court Opinion, 1/16/26, at 2. On August 8, 2025, Father filed an answer and counterclaim for custody in the Court of Common Pleas of Philadelphia County.

The trial court held a custody trial on the parties' petitions on November 12, 2025. At that time, Mother had resided in Philadelphia since June 2023, and Father had resided in San Antonio since February 2024. *See* N.T., 11/12/25, at 81, 228. The parties were each represented by counsel and testified on their own behalf. In addition to the parties' testimony, the court admitted numerous exhibits into evidence, which included documentation related to the Texas litigation. At the conclusion of the trial, the court issued

findings with respect to the custody factors pursuant to 23 Pa.C.S.A. § 5328(a) on the record in open court.[1]  **See** N.T., 11/12/25, at 304-15.

By order dated and entered on November 12, 2025, the trial court awarded Mother sole legal and primary physical custody of then-three-year-old C.J.  **See** Order, 11/12/25, at 1-2.  The court awarded Father partial physical custody for two consecutive overnights in Philadelphia with 24-hour notice to Mother.  **See id.** at 2.  The court also awarded Father partial physical custody of C.J. in Texas, as follows:

> During Christmas of 2025, Father shall have partial physical custody of the child from December 28, 2025[,] through January 4, 2026.  Father shall arrange for all transportation[,] and the parties shall share the cost of the transportation in accordance with the percentages set forth in the child support order.  In all subsequent years[,] Father shall have partial physical custody of the child from December 26 until the day prior to school resuming for the child.  Father shall arrange for all transportation[,] and the parties shall share the cost of transportation in accordance with the percentages set forth in the child support order.
>
> During the summer of 2026, Father shall have partial physical custody the second and third week of July.  Father shall retrieve the child from Mother on Sunday and return her to Mother two Sundays after.  Thereafter, Father shall have the child each year for the entire month of July from the first of the month to the thirty-first of the month.  Father shall arrange for all transportation[,] and the parties shall share the cost of transportation in accordance with the percentages set forth in the child support order.
>
> Father shall have the child each year during winter break commencing in 2026, from December 26 at 6:00 p.m. to the day

---

[1] The Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, which governs child custody actions, sets forth sixteen factors that a court must consider before making an award of custody.  **See** 23 Pa.C.S.A. § 5328(a).

before school reconvenes at 6:00 p.m. Father shall arrange for all transportation[,] and the parties shall share the cost of transportation in accordance with the percentages set forth in the child support order.

Father shall have the child each year during the spring break from 6:00 p.m. the day spring break commences to 6:00 p.m. the day before school reconvenes. Father shall arrange for all transportation[,] and the parties shall share the cost of transportation in accordance with the percentages set forth in the child support order. For each custodial exchange, the parent gaining custody shall retrieve the child from the other parent.

*Id.* at 3 (unnecessary capitalization omitted).

As the above text indicates, the trial court ordered that: (1) Father would "arrange for all transportation[;]" (2) the parties would share the cost of transportation "in accordance with the percentages set forth in the child support order[;]" and (3) the parent "gaining custody" of C.J. over spring break would be responsible for retrieving her from the other parent. *Id.* As explained above, the only percentage listed in the Texas child support order is that the parties are to split any unreimbursed medical costs equally.[2] *See* Mother's Exhibit 3 at 13.

On December 3, 2025, Mother filed a motion for reconsideration, wherein she raised, for the first time, claims that the trial court had erred by allegedly refusing to "hear testimony regarding the parties' income" and the child support order in Texas. Motion for Reconsideration, 12/3/25, at ¶ 5(a)-

---

[2] As discussed further *infra*, the trial court clarified that its intent was for the parties to equally share the costs of transportation to exchange custody. *See* Trial Court Opinion, 1/16/26, at 20-21.

(b).  It does not appear that the trial court ruled on Mother's reconsideration motion.  On December 12, 2025, Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]  The trial court filed its Rule 1925(a) opinion on January 16, 2026.

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred and abused its discretion by improperly delegating to Father unilateral control over all of the essential aspects of transportation regarding the parties and C.J.?

2. Whether the trial court erred or abused its discretion by adopting terms from the parties' Texas support order for custody travel cost allocation while refusing to consider relevant evidence regarding that allocation?

3. Whether the trial court erred or abused its discretion by ordering custody exchange terms that are not sufficiently specific and contrary to the best interests of C.J.?

Mother's Brief at 10 (cleaned up).

"We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad."  **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014).  As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved."  **Rogowski v. Kirven**, 291 A.3d 50, 61 (Pa. Super. 2023) (internal citation and quotation omitted).

---

[3]  Mother filed the notice of appeal and concise statement *pro se* and subsequently obtained counsel for this appeal.

"It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" **King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa. Super. 2005)). "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." **Rogowski**, 291 A.3d at 60-61 (citation omitted).

In Mother's first issue, she argues that the trial court abused its discretion by delegating to Father the responsibility of arranging the transportation related to his periods of partial physical custody of C.J. in Texas. **See** Mother's Brief at 23-31. Specifically, Mother contends that this provision is unreasonable in light of record evidence that she claims established the existence of communication problems between the parties, including but not limited to Father's alleged inability to cooperate with Mother regarding travel arrangements. **See id.** at 24-26, 29-30. Mother further argues that the result of this portion of the trial court's order is that she has no control over travel logistics, timing, and costs, which she claims impedes her ability to comply with the custody order. **See id.** at 27-28.

In its Rule 1925(a) opinion, the trial court explained that it made Father "responsible for making the arrangements" for travel during custody exchanges based upon, in relevant part, its conclusion that Mother "had been actively preventing Father from developing a relationship" with C.J. Trial Court Opinion, 1/16/26, at 16 (emphasis omitted). The trial court reasoned that, "Based off Mother's testimony and demeanor[,] this court did not believe that she would make a good faith effort to participate in arranging the transportation for the child to see Father." *Id.* at 17.

The trial court's findings are well-supported by the record evidence. At the outset, we note that the Texas order awarded Father partial physical custody of C.J. as the parties agreed from June 9, 2023, until it was vacated on March 5, 2025. *See* Mother's Exhibit 3 at 8; *see also* Mother's Exhibit 5. Despite being awarded partial physical custody by the Texas trial court, Father testified that Mother refused to allow him to exercise partial physical custody of C.J. in July of 2023, June of 2024, and during the Christmas season of 2024. *See* N.T., 11/12/25, at 222, 230, 234-35, 239-40, 282.

Significantly, Father further testified that, at some point in early 2025, he was informed that he was going to be deployed from May to October of 2025. *See id.* at 234-35. Prior to this deployment, Father requested partial physical custody of C.J. in Texas, which Mother denied. *See id.* at 235. Father agreed to come to Philadelphia, but Mother then refused to allow any partial

physical custody that was not supervised.[4]  **See id.**  Ultimately, Father was unable to spend any time with C.J. before his deployment due to Mother's refusal.  **See id.** at 282.

As a consequence of Mother's repeated refusals, Father testified that he did not have any physical custody of C.J. from December of 2024, until ordered by the trial court pursuant to an agreement of the parties in October of 2025.  **See id.** at 234, 239.  For this period of partial physical custody, Father acquiesced to Mother's supervision demand because it was "the only way she would allow me to see my daughter." **Id.** at 239-40.  We also note that Mother's own testimony corroborated virtually all of this information. **See id.** at 92, 100-01, 103-04, 138-39, 140-41, 168-73, 177-78, 198-200. Accordingly, Mother's pattern of obstructing Father's attempts to exercise physical custody of C.J. is essentially unchallenged in the certified record.

To the extent that Mother argues that the trial court should have credited her testimony regarding Father's alleged inability to cooperate with her about travel information, our review reveals that the court indeed did credit her testimony in this regard in its analysis of the Section 5328(a)

---

[4] Mother continued to request supervised physical custody at the trial, which she testified was to "afford the opportunity to establish a relationship" between C.J. and Father.  N.T., 11/12/25, at 138.  The trial court found that "there is absolutely nothing . . . that indicates that there is any type of supervision that is recommended, or necessary, or otherwise in the best interest of this child." **Id.** at 312.  Mother has not challenged this aspect of the subject order in this appeal.

factors. *See* N.T., 11/12/25, at 312. Specifically, the trial court concluded that Father was "not forthright" with Mother regarding custody exchange matters. *Id.* However, the court viewed Father's lack of candor as indicative of the larger, mutual communication issues between the parties: "[B]ottom line is there is substantial, substantial distrust. And there is . . . reason[] for it on both sides." *Id.*

Ultimately, the court determined that Mother's well-documented refusals to permit Father to exercise custody were of greater concern. *See* Trial Court Opinion, 1/16/26, at 16-19. It explained, "Unfortunately, in a high conflict case such as this[,] the parties are unable to effectively communicate[,] making it necessary for one party to be responsible for specific decisions regarding the child[;] in this instance[,] travel details." *Id.* at 19. As far as Mother's request for this Court to revise the trial court's weight and credibility findings in her favor, we may not do so. *See Rogowski*, 291 A.3d at 60 ("[W]ith regard to issues of credibility and weight of the evidence, we must defer to the [trial court] who viewed and assessed the witnesses first-hand.") (some brackets in original).

Further, Mother's arguments regarding her inability to comply with the order due to her lack of control over travel are purely speculative, as they are predicated upon the presumed occurrence of uncertain future events, *i.e.*, the ways in which Father might inconvenience her in planning travel for upcoming custodial exchanges. *See* Mother's Brief at 26-28. This Court, however, has

stated that trial courts should not consider "sheer speculation" in custody matters. *Haraschak v. Haraschak*, 407 A.2d 886, 888 (Pa. Super. 1979) (citation omitted).

Based upon the foregoing, we discern no abuse of discretion in the trial court's findings that Mother had a history of withholding C.J. from Father and its resulting conclusion that it was in C.J.'s best interest to delegate the obligation of making travel arrangements for custody exchanges to Father. Therefore, Mother's first issue fails.

Turning to Mother's second issue, she argues that the trial court abused its discretion by allocating the travel costs related to custody exchanges equally between the parties. *See* Mother's Brief at 31-44. Mother's arguments on this point consist of three separate claims, namely that: (1) the trial court allegedly precluded Mother from presenting evidence regarding the costs of transportation; (2) the trial court also allegedly precluded her testimony about the costs of C.J.'s education,[5] to the extent that it would make her unable to afford her contribution to travel costs; and (3) the trial court erred in relying upon the provisions in the Texas support order to apportion the transportation costs. *Id.*

With respect to the first aspect of Mother's arguments wherein she contends that the trial court erroneously precluded her from presenting

_____

[5] As best we can discern, as C.J. was only three years old at the time of the trial, she attends a daycare or preschool program.

evidence of the transportation costs, the first time Mother raised this evidentiary concern was in her December 3, 2025 motion for reconsideration. *See* Motion for Reconsideration, 12/3/25, at ¶ 5(a)-(b). "It is well-established that an issue raised for the first time in a motion for reconsideration is not preserved for appellate review in this Court." *Layton-Herron v. Litke*, 352 A.3d 510, 520 (Pa. Super. 2026) (citations omitted). Accordingly, we conclude that Mother has waived this evidentiary argument. *See id.*

In addition, even if Mother did not waive her evidentiary claim related to transportation costs, we would conclude that the record does not confirm the basis of Mother's allegations. At the custody trial, Mother was unable to provide a monetary figure regarding the estimated cost of flying to Texas to retrieve C.J. *See* N.T., 11/12/25, at 127-28. Father testified, without objection, that he had spent "[o]ver $10,000" traveling to exercise custody of C.J. *Id.* at 252. Therefore, if not waived, this argument would fail inasmuch as there is no record support for Mother's contention that the trial court excluded, or ignored, evidence of the costs of transportation.

Further, with respect to the second aspect of Mother's arguments, which is her assertion that the trial court precluded evidence regarding the costs of C.J.'s education, we also conclude that Mother has waived this claim. It is axiomatic that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Indeed, our Supreme Court has explained, "Requiring issues to be properly raised first in the trial

court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." **Trigg v. Children's Hosp. of Pittsburgh**, 229 A.3d 260, 269 (Pa. 2020) (citing **In re F.C. III**, 2 A.3d 1201, 1211 (Pa. 2010)). Here, on direct examination, Mother's counsel asked Mother about the amount she paid monthly for C.J.'s education. **See** N.T., 11/12/25, at 128. The trial court then reminded Mother's counsel that it was not considering matters related to child support. **See id.** Immediately thereafter, Mother voluntarily abandoned the questioning. **See id.** at 128 ("I understand, Your Honor. . . . So I'll move on."). Because Mother failed to raise this issue relating to her testimony regarding the costs of C.J.'s education in the trial court, depriving the court of the chance to correct this alleged error, we conclude this claim is likewise waived. **See** Pa.R.A.P. 302(a); **Trigg**, 229 A.3d at 269.

The third part of Mother's arguments in her second issue contends that there is insufficient record evidence to support that an equal split of travel expenses is reasonable. **See id.** at 35-44. In support of this argument, Mother has heavily relied upon **White v. Malecki**, 296 A.3d 1210 (Pa. Super. 2023) (addressing whether the intentional travel cost provisions of a custody order were manifestly unreasonable). Mother also challenges the trial court's utilization of the Texas child support order to allocate the costs of travel. **See id.**

Regarding the apportionment of travel costs between the parties, the trial court reasoned that dividing the costs equally was the most reasonable option available, as follows:

> Mother works full time as a civilian contractor in the [USAF]. There is a current child support order running in Texas in which Mother is the [o]bligee and Father is the [o]bligor. Mother's proposal was that Father only be permitted to spend time with the child in Philadelphia and that Father should be solely responsible for his travel costs. Father's position was that the parties should share the transportation costs. This court found Father's position to be more reasonable. In the child support order, unreimbursed medical expenses are split evenly between the parties. Though this provision of the child support order pertains only to medical expenses, this court believes that it is reasonable and equitable for the parties to evenly share travel costs related to custody.

Trial Court Opinion, 1/16/26, at 20-21 (footnotes omitted).

Stated another way, the trial court concluded that splitting the costs of custody exchange transportation was warranted based upon: (1) Mother's employment; (2) Father's already existing child support obligations; and (3) the existing equal split between the parties of C.J.'s unreimbursed medical expenses. *See id.* Our review of the certified record reveals sufficient evidence of record to support these findings.

There is no dispute that the parties are gainfully employed through the USAF, based upon their respective testimonies. *See* N.T., 11/12/25, at 109, 208. Additionally, the record is clear that the Texas child support order financially favors Mother. *See id.* at 128; Mother's Exhibit 3 at 8 ("It is ordered that [Father] pay [Mother] for the support of [C.J.], a child, one thousand two hundred sixty-three dollars and five cents ($1[,]263.05) per

- 14 -

month[.]") (unnecessary capitalization omitted). Further, this same order establishes that the parties are equally financially responsible for C.J.'s unreimbursed medical expenses. *See id.* at 13. Thus, we reject Mother's suggestion that the trial court's findings were not supported by sufficient record evidence.

Nonetheless, Mother maintains that the trial court failed to issue specific findings allegedly required by *White*, including: "(1) whether the costs are reasonable or prohibitive, considering the logistics, nature, and distance of the travel required; and (2) the financial circumstances of the parties; and (3) the impact o[f] the cost assignment upon the parties' respective ability to follow" the custody order. Mother's Brief at 37-38 (citing *White*, 296 A.3d at 1216). However, there is no such passage in *White* setting forth mandatory factors that must be addressed in apportioning the costs of child custody transportation. *See generally White*, 296 A.3d at 1216-18. To the contrary, *White* circumvented the notion that exact evidence is required to render such decisions: "We acknowledge that the record is devoid of certain particularities. The parties' exact incomes are not in the record; neither is there any testimony about exact travel expenses. **Still, the record includes some details on these subjects**." *Id.* at 1217-18 (emphasis added). Therefore, we likewise reject Mother's contention that *White* requires specific findings of fact in this context.

Moreover, Mother's overall reliance upon *White* is also unavailing. In *White*, the trial court granted the request of a father stationed in Germany with the U.S. Army Reserves for primary physical custody of the subject child, which required the child to relocate from the mother's residence in Pennsylvania. *See White*, 296 A.3d at 1212-13. The order awarded the mother partial physical custody during annual spring, summer, and winter breaks. *See id.* at 1216. Although the mother was medically unable to work, the custody order made her financially responsible for almost all of the international flights in order to exercise her custody award. *See id.* at 1217.

On appeal, this Court in *White* held that the trial court's allocation of travel expenses was "manifestly unreasonable" in light of: (1) the steep costs of international travel; (2) the parties' "dramatically different earning capacities[;]" and (3) the mother's responsibility to pay for "nearly all" of the child's travel. *Id.* at 1218. Overall, the *White* court concluded that the terms of the trial court's travel provision inhibited the mother's ability to exercise her partial physical custody award. *See id.*

The facts of the instant case are critically distinguishable from the determinative facts in *White*. It is undisputed that the travel at issue here is interstate, not international. Indeed, *White* explicitly recognized that the expense of international travel was a determinative factor, which is absent from the instant interstate controversy. *See id.* ("The international transportation costs unique to this case are extraordinary in comparison to

the costs associated with interstate custody exchanges[.]").  Further, there is no evidence of significant disparity in the earning capacity of the parties in this case, as set forth above.  **See** N.T., 11/12/25, at 109, 208.  In addition, there is no indication that either party suffers from an impairing disability.  Most importantly, the trial court's order in this case did not saddle one parent with the bulk of the travel costs but split them evenly between the parties.  **See** Order, 11/12/25, at 3; **see also** Mother's Exhibit 3 at 13.  Finally, unlike the appellant in **White**, the travel cost allocation here will not inhibit Mother from exercising her custody award since she was awarded primary physical custody.  **See** Order, 11/12/25, at 2.  Based upon the foregoing, we conclude that **White** is inapposite and readily distinguishable from the instant case.

Mother also assails the trial court's adoption of the 50/50 percentage split from the Texas child support order allocating that the parties equally share the costs of transportation for Father's partial physical custody of C.J. in Texas.  **See** Mother's Brief at 40-43.  In pertinent part, Mother argues that the medical expense allocation contained in the Texas order was not supported by sufficient evidence.  **See id.**  Specifically, Mother seeks to challenge the application of the medical expense division based upon a number of alleged differences between child support findings under Texas law and Pennsylvania

law.[6]  ***See id.*** (citing Pa.R.C.P. 1910.16-2, Pa.R.C.P. 1910.16-5, Pa.R.C.P. 1910.16-6).

Mother's arguments fail inasmuch as she has relied upon Pennsylvania court rules concerning child **support**, however, we emphasize that those provisions are not applicable to child **custody** proceedings.  ***See*** Pa.R.C.P. 1910.1 ("[T]he rules in this chapter govern all civil actions or proceedings brought in the court of common pleas to enforce a **duty of support**[.]") (emphasis added).  Accordingly, Mother's second issue merits no relief.

Mother's third and final issue alleges that the custody exchange terms of the subject order are unenforceable and/or not in three-year-old C.J.'s best interest.  ***See*** Mother's Brief at 44-52.  We will address Mother's arguments *seriatim*.

First, Mother asserts that the order's provision mandating a 6:00 p.m. exchange time in Texas the day prior to school reconvening is not in C.J.'s best interest.  ***See*** Mother's Brief at 44-45, 50-52.  Mother contends that an exchange time at that point in the evening in Texas, then having to travel to

---

[6] We note that there is no indication that Mother raised these particular arguments in the trial court.  ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").  On this ground alone, we may deem the arguments waived.  ***See id.***  However, we decline to do so insofar as the trial court's use of language from the Texas child support order did not materialize until after the subject hearing had concluded.  ***See id.***

Philadelphia, disrupts C.J.'s bedtime and would negatively affect her attendance at school the following day. *See id.* at 50-51.

The trial court's Rule 1925(a) opinion explained the following regarding the 6:00 p.m. exchange time:

> There is nothing manifestly unreasonable about an exchange of 6 p[.]m.[,] nor is there any indication that this could possibly be a result of bias or ill will. Unfortunately, the parties' communication is extremely contentious, which necessitates the court make certain designations of days and times for custody exchanges.

Trial Court Opinion, 1/16/26, at 23-24.

We discern no abuse of discretion. Mother and Father each extensively testified to their significant issues with communication. *See* N.T., 11/12/25, at 85-93, 96-100, 113-23, 129-36, 163-79, 183, 213-15, 219-30, 233-42, 265-67, 269-72, 276, 303. The record is replete with evidence of the parties' inability to agree on essentially every detail of co-parenting, including: when and how Father can spend time with C.J.; exchanging information about C.J.'s medical appointments and preschool; video call times; appropriate conversations topics for the calls; exchange locations; and issues regarding C.J.'s diet and car seat. *See id.*; *see also* Mother's Exhibit 4 (the parties' text message and call logs from AppClose from June 9, 2023, through June 27, 2025). This evidence supports the trial court's finding that the parties' communication is extremely contentious, from which it determined that an exact exchange day and time was required in this case. *See id.* Further, our review reveals that Mother provided no evidence or testimony at the subject

hearing with respect to C.J.'s current bedtime, nighttime routine, or the consequences, if any, of not following it. In the absence of any evidence to the contrary, no relief is due.

Second, Mother argues that the terms regarding which party is responsible for the pick-up/drop-off of C.J. are not sufficiently specific, which she claims renders the order unenforceable pursuant to 23 Pa.C.S.A. § 5323(f), defined below. *See* Mother's Brief at 45-50. Specifically, Mother points out that the language of the order only specifies the parties' custody exchange responsibilities for the summer of 2026 (Father is responsible to pick up C.J. in Philadelphia and drop her off to Mother) and spring breaks (the parent receiving custody is responsible to retrieve C.J.). *See id.* at 47-49. She asserts that the order fails to specify who is responsible for the physical transport of C.J. during the summers after 2026 and the Christmas/winter break periods. *See id.* Mother highlights that the travel arrangements and cost share provisions clearly repeat in every applicable paragraph, but the physical responsibility for the custody exchanges do not. *See id.* at 48-49. We must agree.

In its entirety, Section § 5323(f) provides:

> *Enforcement.* In awarding custody, the court shall specify the terms and conditions of the award in sufficient detail to enable a party to enforce the court order through law enforcement authorities.

23 Pa.C.S.A. § 5323(f). We also note that Section § 5323(g) provides that "[a] party who willfully fails to comply with any custody order may . . . be

adjudged in contempt" and proscribes potential punishments, including fines and jail time. 23 Pa.C.S.A. § 5323(g)(1).

> With respect to the exchange responsibilities, the trial court explained:

> The plain language of the court's order speaks for itself. The party who is receiving custody of the child is to pick the child up from the other parent. This means that if Father is picking the child up from Mother, he is to do so in Philadelphia (unless otherwise agreed and arranged). If Mother is picking the child up from Father, she is to do so in Texas (unless otherwise agreed and arranged).
> . . .

> This court made clear in the written order that the party who is receiving custody of the child is to pick the child up from the other parent. The specific language of the order states, "For each custodial exchange, the parent gaining custody shall retrieve the child from the other parent."

Trial Court Opinion, 1/16/26, at 16, 18. Respectfully, our reading of the plain language of the order does not substantiate this explanation.

The order, as written, is not clear about the parties' custody exchange responsibilities. While it may have been the trial court's intention to have the parent gaining custody to be responsible for retrieving C.J. for all custodial exchanges, the plain language of the order does not establish this. The specific language the trial court references, "For each custodial exchange, the parent gaining custody shall retrieve the child from the other parent[,]" solely appears in the paragraph relating to spring break. Order, 11/12/25, at 3. The only other paragraph that includes the parties' custody exchange responsibility is for summer of 2026, wherein Father is responsible to pick up C.J. in Philadelphia and return her to Mother two weeks later, which conflicts

with the trial court's explanation of its intended result. *See id.* There are no other custody exchange responsibilities delegated in the order. *See id*. Conversely, the language about travel arrangements and costs appear in every paragraph, making it applicable to all custody exchanges. *See id.* Further, because the exchange responsibilities are not clearly delineated for the summer or winter/Christmas breaks, but Father's obligation to arrange the travel is, there is a possibility for the order to be construed to mean that Mother could be completely responsible for the physical transport during those times if that is what Father arranges. *See id.*

Therefore, a plain reading of the order indicates ambiguity with respect to the parties' custody exchange responsibilities, which we conclude violates Section § 5323(f) to the extent that the trial court failed to specify the terms and conditions in sufficient detail to enable a party to enforce the court order through law enforcement authorities. *See* 23 Pa.C.S.A. § 5323(f). We deem this particularly important in this high conflict case where the evidence established that the parties have a history of involving the police in relation to compliance with custody orders. *See* N.T., 11/12/25, at 96-97; *see also* Mother's Exhibit 4, at 3, 5-6, 19, 59. Further, the ambiguity exposes Mother to a potential finding of contempt and the corresponding punishments should she not comply with allowing Father to exercise his partial physical custody award. *See* 23 Pa.C.S.A. § 5323(g)(1).

In addition, considering the trial court's finding outlined above that the parties' substantial communication issues necessitated explicit designations for exchange days and times, we find that same reasoning applicable to the physical custody exchange responsibilities. Based upon the foregoing, we are constrained to conclude that the trial court's provisions with respect to the parties' custody exchange responsibilities are manifestly unreasonable as shown by the evidence of record, which constitutes an abuse of discretion. *See Rogowski*, 291 A.3d at 60-61. Thus, we must vacate and remand for the trial court to enter a new order to explicitly clarify which party is responsible for each custodial exchange.

Lastly, Mother contends that the lack of specifically designated exchange locations is likewise unreasonable in light of the trial court's findings that this case is "high conflict" and "extremely contentious." *Id.* at 45-47 (citing Trial Court Opinion, 1/16/26, at 19, 24). Again, we must agree.

In declining to order specific exchange locations, the trial court reasoned:

> This court ordered the parties to enroll in co-parenting counseling within 30 days of the entry of the order. The purpose of the coparenting counseling is to improve communication between the parents. Arranging the details of pick[-]ups and drop[-]offs can be explored in their required sessions. Mother and Father are both highly intelligent and capable adults who should be able to mutually agree to something as basic as an exchange location.

Trial Court Opinion, 1/16/26, at 19-20.

Regrettably, this reasoning is unsupported by the record and the trial court's own findings. We reiterate that the trial court's finding that the parties' communication is extremely contentious is well-supported by the record. Therefore, this is at odds with the trial court's conclusion, which we agree was made in good faith and intended to benefit the parties, that the parties did not require specified exchange locations, yet needed designated exchange days and times. Thus, the evidence of record shows that the trial court's failure to specify exchange locations in this case is manifestly unreasonable, which constitutes an abuse of discretion. **See Rogowski**, 291 A.3d at 60-61. As a result, we are constrained to remand for the trial court to enter a new order to specify exchange locations.

In sum, we affirm the provision of the final custody order delegating the obligation for making travel arrangements for custody exchanges to Father. We affirm the allocation of travel costs equally between the parties. We also affirm the provision designating specific days and times for custody exchanges. We vacate the order to the extent that it is ambiguous with respect to the parties' custody exchange responsibilities. We remand to the trial court to enter a new order clearly stating who is responsible for each custody exchange and the location where each exchange is to occur.

As Father's summer 2026 partial physical custody is rapidly approaching, we direct the Prothonotary of this Court to immediately remit the record to the trial court. On remand, and after the trial court has received

the record, the trial court shall, within ten days, enter an order complying with the instructions of this memorandum.

Order affirmed in part. Order vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2026